OPINION OF THE COURT
Bentley Kassal, J.
ISSUE
Does the recent "Financial Emergency” encountered by the City of New York constitute a sufficient legal excuse for a three-year default by the Corporation Counsel in asserting a claimed affirmative defense to a pending proceeding or is it simply "law office failure”?
facts
In April, 1967, the defendant, the City of New York (City) awarded the plaintiff, John T. Brady & Co., Inc. (Brady) a $12,480,000 contract for the construction of the Women’s Correctional Institution at Hikers Island. Although scheduled for completion by April 15, 1969, it was not completed until December 17, 1970. Between April 15, 1969 and December 17, 1970, Brady requested and received a number of contract extensions based upon its claims of 745 days lost, due to strikes by various unions and delays by the City and other contractors.
In March, 1971, Brady submitted a claim to the City for *775 $1,076,303 for the balance of contract payments as well as payment for additional work, done either at the City’s direction or resulting from delay caused by the City. Finally, on March 1, 1972, Brady served a summons and, after several extensions, on March 6, 1973 served a complaint claiming damages of $1,200,451.
Although no extensions had been granted to the City and it was technically in default, it served its answer, together with a set of interrogatories on March 27, 1974 — more than one year later. Brady did not object to the City’s belated answer or seek its dismissal and, on December 11, 1975, served an amended complaint. The only difference between the original and amended complaints is that the damages claimed in the latter have been reduced to $1,183,559, reflecting payments to Brady and other contract adjustments made after the service of the original complaint. No answer was served in response to the amended complaint nor were any extensions of time to serve an answer thereto requested or granted.
On March 2, 1976, Brady served its answers to the City’s interrogatories and, on March 8, 1976, served and filed a note of issue and statement of readiness.
PRIOR MOTION
In April, 1978, the matter appeared on the conference calendar of Part 14 of this court. After numerous conferences on the merits, in January, 1979, the City, for the first time, moved for leave to serve an answer to the amended complaint. The proposed answer is virtually identical to the answer to the original complaint except for a new eighth affirmative defense of release. In substance, that defense alleges Brady waived various claims made in both complaints because of certain language contained in a March 9, 1971 letter sent by Brady to the City requesting a final extension of the contract in order to assert further claims under it.
As additional relief, the motion for leave to serve an answer to the amended complaint requested that the proposed answer be deemed to have been served and then sought partial summary judgment, dismissing some of the claims, based upon the proposed defense of release.
I denied the City’s motion without prejudice to renewal, noting the insufficiency of the City’s papers and I stated:
"The amended complaint was served on December 11, 1975. *776 Given this delay, defendant has a double responsibility, namely, to show a proper excuse and to establish a meritorious defense. Sortino v. Fisher, 20 AD2d 25.
"The only explanation for failure to serve the answer is that, 'Defendant hasn’t served an answer to date because of the press of business in the Corporation Counsel’s office’ * * * The delay is substantial and the offered excuse is insufficient.”
PRESENT MOTION
On the present motion, in addition to seeking the relief sought in the original motion, i.e., leave to serve an answer to the amended complaint, deeming the same served and partial summary judgment based upon the release, the City also requests an order dismissing the complaint, pursuant to CPLR 3215 (subd [c]) on the grounds that Brady failed to take proceedings for the entry of a default judgment against the City, within one year of the City’s default in serving an answer.
A. cplr 3215 (subd [c]) relief
This branch of the motion is based upon the City’s admission that it "has not served an answer to the amended complaint and has been in default since January 10, 1976, a period of over three years” and "[Brady] had not agreed to, condoned or relied upon [the City’s] default”.
CPLR 3215 (subd [c]) does not require that judgment be entered within one year of a default but merely that a party "take proceedings for the entry of judgment within one year after the default”. (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3215:11, 3215:12, pp 870-871.) In this case, Brady did take proceedings in that it timely served and filed a note of issue/statement of readiness to place the matter on the trial calendar. The matter then appeared on the conference calendar on one occasion in October, 1976, but was remanded to the waiting list. It did not appear again until April, 1978. The delay in reaching a trial calendar did not result from Brady’s failure to proceed. It was simply a matter of the extraordinary backlog of cases in this court in which the City of New York was a party.
There was nothing about Brady’s action which leads to the conclusion that the complaint was "abandoned”, which is the underlying thrust of CPLR 3215 (subd [c]). The contrary is *777 true. Had the defendant been other than the City, Brady’s course of conduct might have appeared unusual but, with the City as a defendant, plaintiffs have become accustomed to waiting. As a matter of fact, I can take judicial notice of this since I was the Conference and Assignment Judge for the City of New York Part for the entire year of 1979.
This phase of the application is denied.
B. MOTION FOR LEAVE TO SERVE ANSWER TO THE AMENDED COMPLAINT
Although Brady never sought leave pursuant to CPLR 3025 (subd [b]) to serve the amended complaint, nevertheless, the amended complaint did not add any new causes of action, claims or change the theory of the pleadings. Rather, in the nature of a trial amendment conforming the pleadings to the proof, it merely reduced the damages sought, due to events occurring after the service of the original complaint. Obviously, this amendatory action benefited, rather than prejudiced, the City and since the City had actual knowledge and never objected to the amendment, I am deeming the amended complaint to have been timely served.
The answer the City proposes to serve in response to the amended complaint is virtually identical to the original answer except for the addition of the new eighth affirmative defense of release. In view of the fact that the original answer gave Brady notice of the defenses in the proposed answer (except for the new affirmative defense) and considering the informal procedure Brady followed in serving the amended complaint, simple fairness dictates that the proposed answer be similarly treated, except as to the eighth affirmative defense.
The proposed eighth affirmative defense presents an entirely different situation. If established, that defense (and the merits are far from clear) would constitute a complete bar to most of plaintiff’s claims asserted. Thus, it pleads new facts, as well as a new theory of defense. Moreover, as a defense raising issues not in the complaint, CPLR 3018 (subd [b]) expressly requires that it be pleaded as an affirmative defense.
Whether this motion is viewed as one seeking the vacating of the defendant’s default in answering the amended complaint or permitting amendment of the original answer, the same general standards should apply. Consistent with the *778 general philosophy of civil procedure, great liberality is shown in relieving parties from defaults in pleading so that cases may be resolved at trial upon the merits. On the other hand, CPLR 3211 (subd [a], par 5) and CPLR 3211 (subd [e]) clearly mandate that the defense of release, which the City now seeks to assert, is waived unless raised either by a motion before service of the responsive pleading or is asserted in the responsive pleading itself. Further, as previously indicated, CPLR 3018 requires that the defense of release be specifically pleaded. If these rules are to have any prophylactic effect, a party in default should not be lightly relieved from their consequences. At a minimum, a justifiable explanation for the failure to assert the defense, in a timely fashion, is required especially where, as here, the delay is more than three years from the service of the amended complaint and more than five years from the service of the original complaint. (Leslie Sue Flowers Corp. v J. M. Fields, Inc., 55 AD2d 867.)
EXCUSABLE DEFAULT
On this motion, the City has repeated the excuse it originally offered for its delay but with expanded facts: "Defendant’s delay in not answering the amended complaint was caused by the press of business in the Corporation Counsel’s office * * * as a direct result of the financial emergency within the City of New York * * * This emergency existed at the time of the service of the amended complaint and has continued to exist thereafter. The operation of the Corporation Counsel’s office had been severely crippled by the massive budget and personnel cuts imposed upon it * * * This personnel problem, when coupled with the increase in litigation due to the financial emergency itself, was responsible for the massive backlog of unanswered cases that included the case at bar.”
In order to contest this bald assertion, Brady’s attorneys’, through a Freedom of Information Law (Public Officers Law, § 85 et seq.) demand on the office of the City’s Corporation Counsel ascertained the following staffing levels in the contracts division during the relevant period:
*779 PERIOD NUMBER OF ATTORNEYS
January 1, 1975 - January 29, 1975 20
June 19, 1975 - July 1, 1975 14
July 2, 1975 - July 16, 1975 16
July 17, 1975 - August 13, 1975 17
December 31, 1975 - January 28, 1976 18
January 29, 1976 - February 9,1976 19
July 1, 1976 - July 14, 1976 20
December 28, 1976 - January 12, 1977 22
January 13, 1977 - January 27, 1977 21
June 20, 1977 - July 24, 1977 21
January 2, 1978 - January 13, 1978 21
January 16, 1978 - February 20, 1978 19
In response, the City claims that eight of the attorneys listed worked exclusively on the "water tunnel team” or were administrators or assigned solely to document review; that six experienced litigators were "cut” in June, 1975 and replaced with recent law graduates and, finally, the case load was increased due to the "financial crisis”. With regard to the claim of staff cuts, on the basis of further information obtained from the Law Department and without dispute, plaintiff indicates by name the "experienced litigators” who remained in the contracts division, which together with the numerical data submitted, discloses no overwhelming staff cuts.
While there was some increase in the litigation case load, it was not extraordinary nor did the City’s financial crisis cause the increased case load. Rather, in great measure it resulted from the City’s "defunding” or simply walking away from existing contracts, thereby requiring those affected to sue the City. (See, e.g., Lexington Realty Corp. v City of New York, NYLJ, Aug. 23, 1978, p 6, col 2.)
Therefore, I conclude that, at best, the excuse offered by the City for its failure to take appropriate legal steps in this matter still constitutes "law office failure”. As recently reaffirmed by the Court of Appeals, that reason is not a sufficient basis for excusing the failure to timely act. (Barasch v Micucci, 49 NY2d 594.)
Nor may the Corporation Counsel claim a special privilege in this regard, since "as the law firm for the City of New York, the Corporation Counsel’s office and the many attorneys employed * * * have an obligation to conduct lawsuits in a disciplined and efficient manner in order both to protect the interests of the almost 8 million city residents and also to *780 assure plaintiffs that their claims will be expeditiously and fairly resolved”. (Beetz v City of New York, 73 AD2d 925, 926; see, generally, Vina v City of New York, 104 Misc 2d 958, and cases cited therein; Crump v City of New York, NYLJ, Jan. 25, 1979, p 11, col 6; Worrell v City of New York, 101 Misc 2d 267.)
As suggested by Justice Greenfield in Vina v City of New York (supra, p 961), the Corporation Counsel’s prior conduct in the prosecution or defense of City actions "if not a willful and deliberate default [demonstrates at least] a clear indifference to legal procedures”. The reasons for this past practice are explained in part by a recent report issued by the present Corporation Counsel, Allen G. Schwartz.
"In 1975, at the onset of the City’s fiscal crisis, a judgment was made by then Mayor Beame that every agency, including the City’s Law Department, should be reduced in size through a process which including [sic] hiring freezes, wage freezes and layoffs * * * the City’s hiring freeze, wage freeze and layoff policies had effected short term, but insignificant savings, and over the long haul, had resulted in substantial financial detriment to the City in increased pay outs on judgments and settlements, losses in revenue and losses as a result of inefficiency and delay (e.g., in the processing of City contracts). * * *
"In 1978, confronted with the impact of cutbacks in numerous agencies, many urged that the City hold the line on additional expenditures for its Law Department. Within three months after taking office, however, Mayor Koch (a) supported a $1.3 million budget modification for the Law Department and, within six months (b) prepared an executive budget for fiscal year 1979 which provided for an increase in funds for the Law Department of $5.8 million to a total budget of $22.4 million for the year. * * *
"The Department was reorganized and its staff increased and upgraded. * * *
"The Mayor, therefore, properly concluded that it is not cost-effective to reduce the City’s legal arm if the effect of doing so would be to increase the level of judgments and expenditures which the City will have to bear.” (City’s Law Department: A Cost Effective Agency, NYLJ, Jan. 24, 1980, p 26, col 1.)
The above report, and the evidence presented on this mo *781 tian, indicate that the City of New York, while under a prior City administration, made a conscious decision to meet its fiscal problems by across-the-board cuts and it was known as far back as 1976 that this was a counterproductive policy. In retrospect, the current City administration has recognized that those policies, when applied to the Law Department, were shortsighted, penny-wise and pound-foolish. To its credit, the present administration has "beefed up” the Law Department and taken a more aggressive attitude. (See, e.g., De Fino v City of New York, 99 Misc 2d 594. [On the other hand, at times, the City appears to have become overly and zealously influenced by its new "aggressive attitude” to the extent of forgetting its responsibilities to deal fairly with its citizens and employees. See, e.g., Matter of De Milia (NYLJ, Nov. 20, 1979, p 6, col 1) where Justice Ascione found that the Corporation Counsel had chosen to ignore statutory directions which the present administration opposes and to compel the employees affected to individually sue the City for relief to which they were clearly entitled.])
CONCLUSION
The City is to be applauded for its present efforts to improve the Law Department to have proper legal representation. The obvious rewards of this new attitude should be manifold, but they do not include the right to be relieved automatically from the consequences of the City’s prior lax attitude toward proper representation. As described, the previous administration determined to give the Law Department’s funding a relatively low priority. In so doing, it stands in the same position as any party electing not to have proper counsel and which must suffer the legal consequences therefrom.
The substantial delay by the City, when combined with its failure to offer an acceptable legal excuse, warrants denial of the application at this stage to plead the affirmative defense of release. (Leslie Sue Flowers Corp. v J. M. Fields, Inc., 55 AD2d 867, supra.) Accordingly, the motion is granted only to the extent that the proposed answer, with the exception of the eighth affirmative defense, shall be deemed served upon service of a copy of this order, with notice of entry. In all other respects, the City’s motion is denied.